Richard Lehv (rlehv@fzlz.com)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
4 Times Square, 17th Floor
New York, NY  10017
Phone:  (212) 813-5900
*Attorneys for Plaintiff, Chelsea Textiles Limited*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHELSEA TEXTILES LIMITED,<br><br>                      Plaintiff,<br>     v.<br><br>BEBE & LENOX, and PHILIP J. SADICK,<br><br>                    Defendants. | Civil Action No. _____<br><br>**COMPLAINT** |

Plaintiff, Chelsea Textiles Limited, by its attorneys, Fross Zelnick Lehrman & Zissu, P.C., for its Complaint against Defendants, Bebe & Lenox, and Philip J. Sadick, alleges the following:

**NATURE OF THE ACTION**

1.      Plaintiff, Chelsea Textiles Limited, is a well-known and highly successful designer, manufacturer, and retailer of furniture and textiles for the home. Defendant Philip J. Sadick, is a former employee of Plaintiff. The other Defendant, Bebe & Lenox, is Mr. Sadick's new company. While still employed by Plaintiff, Defendant Sadick embarked on a surreptitious plan to build a competing business, using Plaintiff's own highly confidential, non-public information, including Plaintiff's plans to introduce a new line of furniture, as well as information concerning which of Plaintiff's products were most popular – and hence most worthy of copying. Once he left Plaintiff's employ, he immediately started selling a line of furniture directly copied from Plaintiff's planned new line as well as the most successful pieces

in Plaintiff's existing collection, and blatantly copied Plaintiff's unique marketing program (or "trade dress") that consists of a carefully-coordinated and consistent display of furniture and finishes. In addition, Defendants disclosed to one of Plaintiff's large customers the name of one of Plaintiff's key suppliers, and authorized the customer to purchase products directly from the manufacturer, bypassing Plaintiff. Defendants' use and disclosure of this information caused significant business losses to Plaintiff, amounting to hundreds of thousands of dollars of lost revenue.

2.     This conduct is an extremely serious breach of Defendants' fiduciary duty and duty of loyalty to Plaintiffs. Further, Defendants are competing unfairly by copying Plaintiff's most successful products as well as Plaintiff's marketing methods. Not only is Defendant's conduct damaging Plaintiffs and causing immediate and irreparable harm to Plaintiffs, but also it is deceiving the public.  Indeed, Defendants' conduct has already caused actual confusion.

3.     Accordingly, Plaintiff asserts claims for breach of fiduciary duty under New York common law, tortious interference with Plaintiffs' business relationships, unfair competition under Section 43(a) of the Trademark Act, 15 U.S.C. § 1125(a); and substantial and related claims under New York unfair competition law.  Plaintiff seeks injunctive relief to prevent further injury, as well as return of the salary Defendant Sadick was paid while employed by Plaintiff, additional monetary relief in the form of Defendants' profits, Plaintiff's damages, attorneys' fees, interest, and such other relief as the Court deems just and proper.

## PARTIES

4.     Plaintiff, Chelsea Textiles Limited, is a corporation organized and existing under the laws of England, with a principal place of business at 13 Walton Street London SW3 2HX.

5.     On information and belief, defendant Bebe & Lenox is corporation or other entity organized and existing under the laws of New York, with its principal place of business at 35 East 10th Street, 3G, New York, NY 10003.

6.      On information and belief, defendant Philip J. Sadick ("Sadick") is a citizen and domiciliary of the State of New York, whose address is c/o Bebe & Lenox 35 East 10th Street, 3G, New York, NY 10003. On information and belief Sadick owns and controls Bebe & Lenox and directly profits from its activities.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 in that the amount in controversy exceeds the sum or value of $75,000 and is between citizens of New York and of England, and under Section 39 of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1121, and under Sections 1331, 1338(a) and 1338(b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) and 1338(b).  The Court has supplemental jurisdiction over the state law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).

8.     This Court has personal jurisdiction over Defendants because Defendants are citizens New York and are engaged in infringing activities in this State.

9.     Venue is proper in this district under Section 1391(b) of the Judicial Code, 28 U.S.C. § 1391(b), because Defendants are subject to personal jurisdiction in this district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**A.    Plaintiffs' Business and trade dress**

10.    Founded in 1992, Plaintiff, Chelsea Textiles Limited, based in London, England, sells highly successful lines of furniture, fabrics, and cushions under the Chelsea Textiles brand. For twenty-three years, Plaintiff's products have been available at a showroom in New York City at 232 East 59th Street New York, NY 10022. Plaintiff also has a website at https://www.chelseatextiles.com.

11.    Plaintiff's lines of furniture include French Country, English Country, Mid-Century Modern, Gustavian & Rococo, and Bamboo & Tropical. As a result of hard work and significant financial investment, Plaintiff developed these successful lines of furniture derived from original pieces, including eighteenth century pieces purchased at auction.  Plaintiff's products are not, in general, mere copies of the originals in its collection. Rather, Plaintiff's skilled designers have created new designs based on the classic originals, specifying to their manufacturers precise dimensions, creative details and novel finishes. The resulting pieces are widely sought after by interior designers.  Moreover, Plaintiff has created a system that allows the designs to be customized to suit a client's requirements.

12.    In addition to the furniture itself, Plaintiff has developed a unique marketing program that consists of a carefully coordinated and consistent display of furniture and finishes. Designers and customers viewing Plaintiff's marketing materials can not only examine individual items, but also can immediately see how the each collection of furniture and accessories will work as a whole and how each piece can be customized to suit the customer's tastes. This trade dress is in effect a trademark of Plaintiff, since it identifies Chelsea Textiles as the source of the goods. The trade dress includes not only the design of the furniture itself, but

also such details as the prominent use of the owners' wire-haired fox terrier, Betty, as mascot; displaying benches in a horizontal stack; presenting color choices in a grid of small square tiles; using unique names for the colors; and so on.

13.     As a result of Plaintiff's efforts and the tremendous success of Plaintiff's products, Plaintiff's trade dress has come to identify Plaintiff exclusively and uniquely in its field, have become well-known, and represent enormous goodwill of Plaintiff, signifying products that are of the highest quality and that derive exclusively from Plaintiff.

14.     Plaintiff will suffer irreparable harm if any third parties, including Defendants, are allowed to trade on Plaintiff's reputation and goodwill by offering goods copied from Plaintiff's.

15.     Plaintiff's Bamboo & Tropical collection is based on two eighteenth century faux bamboo chairs designed by Ephraim Stahl (1767-1820). Plaintiff purchased these two antique chairs (a side chair and an armchair) at auction in Stockholm – at considerable expense – in June 2016.

## B.     Defendant's Unlawful Conduct

16.     Employees owe their employer "fiduciary duties of good faith and fair dealing." As a result, an executive is "prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties."[1] In addition, a breach of fiduciary duty and breach of the duty of loyalty "occurs when a fiduciary commits an unfair, fraudulent, or wrongful act, including misappropriation of trade secrets, *misuse of confidential information,* solicitation of employer's customers before cessation of employment, conspiracy to bring about mass resignation of an employer's key

---

[1] *Duane Jones, Co. v. Burke*, 117 N.E.2d 237, 245 (N.Y. 1954) (citation omitted).

employees, *or usurpation of the employer's business opportunity*."[2] Employees who violate these duties by planning a competing business and using confidential information while still employed risk losing their profits from their new venture and having to return the salary they were paid while they were planning the competing business

17.     In addition to the duty imposed by law, Defendant Sadick signed an employee handbook, in which he specifically agreed not to use or disclose "information relating to proprietary or confidential matters, trade secrets, customer lists, processes, methods, pricing strategies, marketing plans, product introductions, advertising or promotional programs, sales or other confidential business matters."

18.     In June 2016, when Plaintiff purchased the Stahl chair, Defendant Sadick was an employee of Plaintiff and would remain an employee – albeit a disloyal one – for eight months before he left Chelsea Textiles. While still an employee, Defendant Sadick learned that Chelsea Textiles had purchased the Stahl chair and knew that his employer intended to base a new line of furniture around this chair. He also knew that this was confidential, non-public information of his employer.

19.     On information and belief, while he was still in the employ of Chelsea Textiles, Defendant Sadick sent photographs of the Stahl chair to a manufacturer in Indonesia to have copies made, which allowed him to have competing copies of this chair ready to offer to the trade almost immediately after he left Chelsea Textiles and before Chelsea Textiles' own collection was ready.

20.     On information and belief, the entire line of furniture that Defendants launched in April 2017 was designed and ordered while Defendant Sadick was still a Chelsea Textiles

---

[2] *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 227 (S.D.N.Y. 2013) (citation omitted) (emphasis added).

employee. There simply was not enough time between Sadick's departure from Chelsea Textiles in February 2017 and his launch of the line in April 2017 for him to design, order and obtain samples from the factory in Indonesia if he started work on that collection after he left Chelsea Textiles. Two months would insufficient, given the time needed to design, manufacture, carve, paint, correct, pack, and ship the samples and clear them through Customs in both Indonesia and the U.S.

21.     Not only did Defendant Sadick spend his time creating his own competing line while employed by Plaintiff, but also he neglected his duties as the executive in charge of Plaintiff's New York showroom, resulting in declining U.S. sales.

22.     This is a clear breach of Defendant Sadick's fiduciary duty and duty of loyalty to Plaintiff.

23.     Moreover, in at least one case, Defendant Sadick disclosed to Anthropologie, a large customer of Plaintiff, the name of one of Plaintiff's key suppliers. Defendant Sadick told the customer that it could buy directly from the supplier, thus cutting out Plaintiff and causing significant business losses to Plaintiff, amounting to hundreds of thousands of dollars of lost revenue. This in another clear breach of fiduciary duty and breach of loyalty, which on information and belief was done intentionally to injure Plaintiff, in direct violation of New York law.

24.     With a few exceptions, Defendants' line of products is copied directly from the best-selling items in Plaintiff's line. The identity of Plaintiff's best-selling items is confidential, non-public information, which no competitor would know. Defendants had access to this information only because Sadick learned it as an employee of Plaintiff.

25.     Defendants have copied not only Plaintiff's unique and best-selling furniture designs, but also the other unique combination of elements that constitutes Plaintiff's trade dress. The entire look and feel of Defendants' furniture collection as well as their marketing materials, is copied from, and confusingly similar with, the Chelsea Textiles trade dress. In addition to copying the entire combination of elements, Defendants have copied specific details. For example, Defendants use a similar dog, with a similar name (Bebe), in similar poses:

*Plaintiff*                                        *Defendants*

   

There is no reason to use this dog, except to copy Plaintiff and confuse the public. There is no reason to use similar square color chips, arrayed in a similar grid, with similar names (Gustav Grey vs. Gustavian Grey, for example):

*Plaintiff*                                                        *Defendants*

     

There is no reason to stack benches in advertising in the exact same manner as Plaintiff:

*Plaintiff*                                                        *Defendants*

     

26.     Further, Defendants have copied Plaintiff's bamboo chairs:

*Plaintiff*

*Defendants*




*Plaintiff*

*Defendants*




27.     Defendant's line of products is directed to the exact same customers and potential customers as those for Plaintiff's products.

28.     Defendants' products are of poor quality, vastly inferior to the high quality of Plaintiff's products.

29.     Customers and potential customers could easily believe, mistakenly, that Plaintiff's business and Defendants' business are one and the same, or that Defendants are affiliates of Plaintiff, or that Plaintiff licenses, endorses or approves Defendants' business or services, or that Plaintiff and Defendants are otherwise connected or associated.

30.     Even the most careful person is likely to be confused by Defendants' use of Plaintiff's trade dress. Indeed, at least one design professional was actually confused by Defendants' advertising and promotion, which is strong evidence that others are also likely to be confused and that Plaintiff's reputation is likely to be damaged by the poor quality of Defendants' products.

## C.     Harm Caused by Defendant's Infringing Conduct

31.     On information and belief, Defendants' conduct is intended to cause confusion, and is intentionally fraudulent, malicious, willful and wanton.

32.     On information and belief, Defendants sought to benefit from Plaintiff's confidential business plans, to harm Plaintiff and to benefit from the recognition and goodwill of the Plaintiff's trade dress.  Defendant's conduct appears to be calculated to confuse and mislead consumers, to divert business from Plaintiff and otherwise to misappropriate the goodwill of Plaintiff.

## FIRST CLAIM FOR RELIEF:
## BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY

33.     As set forth above, Defendant Sadick, as an employee of Plaintiff, owed Plaintiff

a fiduciary duty and a duty of loyalty. This included an obligation not to engage in preparations

to form a competing business while in the employ of Plaintiff and while being paid a salary by

Plaintiff, not to disclose confidential business information of Plaintiff, and not to use confidential

business information of Plaintiff for his own gain.

34.     In direct violation of those obligations, Defendant Sadick engaged in preparations

to form a competing business while in the employ of Plaintiff and while being paid a salary by

Plaintiff; disclosed confidential business information – namely the name of a principal supplier –

to a customer of Plaintiff; and used confidential business information – namely, the identity of

Plaintiff's best-selling items and Plaintiff's plans to design a line of furniture around the Stahl

chair – for their own gain; and have thereby caused enormous and irreparable harm to Plaintiff.

35.     Defendants' conduct has caused and is causing irreparable injury to Plaintiff, and,

unless enjoined by this Court, will continue both to damage Plaintiff and to deceive the public.

Plaintiff has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF:
## BREACH OF CONTRACT

36.     As set forth above, Defendant Sadick signed an employee handbook, in which he

specifically agreed not to use or disclose "information relating to proprietary or confidential

matters, trade secrets, customer lists, processes, methods, pricing strategies, marketing plans,

product introductions, advertising or promotional programs, sales or other confidential business

matters."

37.     By signing that handbook, Defendant Sadick entered into a binding agreement

with Plaintiff.

38.     In direct violation of that agreement, Defendant Sadick used and disclosed confidential business information – the identity of Plaintiff's best-selling pieces and the name of a principal supplier – and used Plaintiff's confidential business plans – its plan to design a line of furniture around the Stahl chair – causing enormous harm to Plaintiff and its goodwill.

39.     Defendants' conduct has caused and is causing irreparable injury to Plaintiff, and, unless enjoined by this Court, will continue both to damage Plaintiff and to deceive the public. Plaintiff has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF:**
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP**

40.     Plaintiff had a business relationship with Anthropologie, a large retailer, to whom Plaintiff sold a metal bed, based on a campaign bed, but designed by Plaintiff and manufactured by Plaintiff's manufacturer in India.

41.     As an employee of Plaintiff, Defendant Sadick knew of that relationship.

42.     While still employed by Plaintiff, Defendant Sadick intentionally interfered with that relationship by disclosing to Anthropologie the name of manufacturer and by authorizing Anthropologie to purchase the bed directly from the manufacturer.

43.     Defendant Sadick acted solely out of malice in intentionally interfering with that relationship, and used dishonest, unfair and improper means to do so, namely, providing the name of the manufacturer and giving Anthropologie permission to buy from the manufacturer, when his obligation as an employee was to keep the name of the manufacturer confidential, and he had no authorization to give the customer permission to buy from the manufacturer.

44.     Defendant Sadick's interference caused injury to Plaintiff's relationship with its customer, amounted to hundreds of thousands of dollars in lost sales.

## FOURTH CLAIM FOR RELIEF:
## UNFAIR COMPETITION (15 U.S.C. § 1125(a))

45.    Plaintiff owns a valid and protectable trade dress, consisting of the a number of non-functional elements, including but not limited to the following:

    a.   The use of a wire-haired fox terrier in advertising as shown above;

    b.   The use of a grid of square color chips as shown above to display Plaintiff's custom colors;

    c.   The display of benches stacked as shown above;

    d.   The distinctive design elements or trade dress of Plaintiff's faux bamboo side chairs and armchairs, based on the Stahl chair, as follows: The chairs are hand carved to give the appearance of bamboo. The side chair has a back formed of (a) two stiles, (b) a horizontal top rail, (c) a horizontal lower rail, and (d) three evenly-spaced vertical spindles each having a noticeably smaller diameter than that of the stiles and rails. The chair has a padded upholstered seat, which covers the top of the apron. The front legs are connected to the rear legs by two spindles on each side. The chair has a single stretcher in the rear and single stretcher in the front. The two stretchers are attached midway between the side spindles. The stiles and the front and rear legs are divided into three segments each, while the vertical spindles on the back are each divided into six segments. The stiles and rear legs are tapered, widest at the apron and narrowest at the floor. The stiles, rails, spindles, legs, and stretchers are all rounded, like bamboo, except that the apron is flat and the stiles and rear legs have been carved flat where they meet the apron.

The front legs have been carved so that they have a small bracket underneath the apron. The armchair has the same elements as the side chair. It also has an arm supported by two vertical spindles, a lower rail, and a curved arm support attached to both the apron and to the right and left upper spindles that connect the front and rear legs. Both chairs are available in a number of colors, hand painted and hand distressed to give the appearance of the grain, the dots and spots of real bamboo.

e.   Numerous other items of furniture in Plaintiff's Gustavian collection, listed and shown in Exhibit A hereto.

46.   By virtue of extensive sale, advertising and promotion, as well as editorial references and other marketing, the foregoing trade dress has acquired secondary meaning, and thus identifies Plaintiff as the source of the goods.

47.   Defendants have copied all the foregoing design elements.

48.   Defendants' copying of Plaintiff's trade dress is likely to cause confusion or to cause mistake or to deceive customers, potential customers, the public, and the media as to the affiliation, connection or association between Defendants and Plaintiff, or as to the origin, sponsorship or approval of Defendants' products.

49.   This conduct is in effect a representation that Defendants are connected with or authorized by Plaintiff, and places Plaintiff's own reputation and goodwill beyond Plaintiff's control.

50.   On information and belief, Defendants' conduct is willful, deliberate and in bad faith, and undertaken with full knowledge of Plaintiff's rights and for the deliberate purpose of harming Plaintiff and its goodwill.

51.     As a result of the foregoing, Defendants have falsely designated the origin of their products and have engaged in unfair competition, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

52.     Defendants' conduct has caused and is causing irreparable injury to Plaintiff, and, unless enjoined by this Court, will continue both to damage Plaintiff and to deceive the public. Plaintiff has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF:
## COMMON LAW UNFAIR COMPETITION

53.     Defendants' conduct constitutes unfair competition under the common law of the State of New York.

54.     On information and belief, Defendants' conduct is willful, deliberate and in bad faith.

55.     Defendants' conduct has caused and is causing irreparable injury to Plaintiff, and, unless enjoined by this Court, will continue both to damage Plaintiff and to deceive the public. Plaintiff has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF:
## DECEPTIVE TRADE PRACTICES IN VIOLATION OF N.Y.
## GEN. BUS. LAW § 349

56.     By copying Plaintiff's trade dress, Defendants have engaged in activities that deceive or have a tendency to deceive a material segment of the public to which Defendants has directed their marketing activities.

57.     On information and belief, through such deceptive acts, Defendants have engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted in injury to consumers and harm to the public in the State of New York.

58.     On information and belief, Defendants' conduct is willful and in knowing disregard of Plaintiff's rights.

59.     By virtue of the foregoing, Defendants have engaged in deceptive acts or practices in the conduct of her business, in violation of Section 349 of the General Business Law of the State of New York.

60.     Defendants' conduct has caused and is causing irreparable injury to Plaintiff, and, unless enjoined by this Court, will continue both to damage Plaintiff and to deceive the public. Plaintiff has no adequate remedy at law.

**WHEREFORE**, Plaintiff respectfully demands judgment as follows:

1)   Entering judgment for Plaintiff on each of its claims.

2)   Directing that Defendants, and each of them and their partners, officers, agents, privies, shareholders, principals, directors, licensees, attorneys, servants, employees, affiliates, subsidiaries, successors and assigns, and all persons acting in concert or in participation with any of them, be preliminarily and permanently enjoined from:

a.      Using or copying Plaintiff's trade dress, including from manufacturing, importing, selling, offering for sale, advertising, or promoting Defendants' "Mismatched Collection" and any other goods copied from Plaintiff or based on the Stahl chair or based on Plaintiff's Gustavian & Rococo Collection or Bamboo & Tropical Collection;

b.      Using any confidential information or business plans of Plaintiff;

c.      Using any other false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the public or the media or to deceive the public or the media into believing that Defendants' products, services or activities are in any way sponsored, licensed, endorsed,

or authorized by, or affiliated, associated or connected with, Plaintiff, or originate from

Plaintiff;

        d.      doing any other acts or things calculated or likely to cause confusion or

mistake in the mind of the public or to lead the public into the belief that the goods or

services promoted, offered, or rendered by Defendants emanate from or originate with

Plaintiff, or are somehow sponsored, licensed, endorsed, or authorized by, or affiliated,

associated or connected with, Plaintiff, or originate from Plaintiff;

        e.      engaging in any other activity constituting unfair competition with

Plaintiff or constituting an infringement of Plaintiff's trade dress;

        f.      assisting, aiding, or abetting any other person or business entity in

engaging in or performing any of the activities referred to in the above subparagraphs (a)

through (e), or effecting any assignments or transfers, forming new entities or

associations or utilizing any other device for the purpose of circumventing or otherwise

avoiding the prohibitions set forth in subparagraphs (a) through (e).

3)      Directing that Defendants deliver up to Plaintiff for destruction or other

disposition, without any compensation to Defendants, all products, labels, tags, signs, stationery,

prints, packages, promotional and marketing materials, advertisements and other materials

currently in their possession or under her control incorporating, featuring or bearing Plaintiff's

trade dress or resulting from unauthorized use of Plaintiff's confidential information and

business plans.

4)      Directing such other relief as the Court may deem appropriate to prevent the

public from deriving the erroneous impression that any goods or services sold or rendered or

promoted by Defendants are authorized by Plaintiff or related in any way to Plaintiff or Plaintiff's business, or that Defendants are otherwise affiliated with Plaintiff.

     5)    Directing Defendants to file with the Court and serve on counsel for Plaintiff within thirty (30) days after entry of judgment, a sworn written statement setting forth in detail the manner and form in which Defendants have complied with paragraphs 2 through 4 above.

     6)    Directing Defendants (i) to pay all salary and other benefits Sadick was paid by Plaintiff from 2014 until he left Plaintiff's employ, and (ii) to account for and pay to Plaintiff their profits, gains, property and advantages attributable to the unlawful conduct.

     7)    Awarding Plaintiff such damages that it has sustained or will sustain by reason of Defendant's unlawful conduct.

     8)    Pursuant to 15 U.S.C. § 1117(a), awarding Plaintiff an amount up to three times the amount of actual damages sustained as a result of Defendants' violations of the Lanham Act.

     9)    Awarding Plaintiff the costs of this action including reasonable attorneys' fees pursuant 15 U.S.C. § 1117 and applicable state law.

     10)    Awarding Plaintiff interest, including pre-judgment interest, on the foregoing sums.

     11)    Awarding Plaintiff such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        July 18, 2018

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By:  *Richard Lehv*

     Richard Lehv (rlehv@fzlz.com)
4 Times Square, 17th Floor
New York, New York 10017
Tel:  (212) 813-5900

*Attorneys for Plaintiff, Chelsea Textiles*